1   JAMES M. BURGESS, Cal. Bar No. 151018
    ROSS A. BOUGHTON, Cal. Bar No. 241119
2   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
3       Including Professional Corporations
    1901 Avenue of the Stars, Suite 1600
4   Los Angeles, CA 90067-6017
    Telephone: 310-228-3700
5   Facsimile: 310-228-3701

6   WILLIAM V. WHELAN, Cal. Bar No. 116372
    ASHLEY HIRANO, Cal. Bar No. 265282
7   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
8       Including Professional Corporations
    501 West Broadway, 19th Floor
9   San Diego, California 92101-3598
    Telephone: 619-338-6500
10  Facsimile: 619-234-3815

11  Attorneys for Defendants
    SONY CORPORATION OF AMERICA,
12  SONY COMPUTER ENTERTAINMENT
    AMERICA INC., and SONY ONLINE
13  ENTERTAINMENT LLC

14

15                  UNITED STATES DISTRICT COURT

16                  CENTRAL DISTRICT OF CALIFORNIA

17

18  ALEXANDER STERN,                    Case No. CV09-7710 PA (FFMx)

19              Plaintiff,
                                        **DEFENDANTS' NOTICE OF**
20       v.                             **MOTION AND MOTION TO**
                                        **DISMISS UNDER F.R. Civ.P. RULE**
21  SONY CORPORATION OF                 **12(b)(6); MEMORANDUM OF**
    AMERICA, SONY COMPUTER              **POINTS AND AUTHORITIES IN**
22  ENTERTAINMENT AMERICA INC.,         **SUPPORT OF MOTION TO**
    and SONY ON-LINE                    **DISMISS**
23  ENTERTAINMENT LLC,

24              Defendant.              Date: January 25, 2010
                                        Time: 1:30 p.m.
25                                      Place: Courtroom 15

26                                      NO ORAL ARGUMENT UNLESS
                                        REQUESTED BY THE COURT
27

28

TO PLAINTIFF ALEXANDER STERN AND TO HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 25, 2010 at 1:30 p.m., or as soon thereafter as counsel can be heard, in the Courtroom of the Honorable Percy Anderson, United States District Judge, United States District Courthouse Building, 312 N. Spring Street, Los Angeles, California 90012, Defendants Sony Corporation of America, Sony Computer Entertainment America, Inc., and Sony On-Line Entertainment LLC (collectively "Sony") will and hereby do move this Court to dismiss the Plaintiff's entire Complaint, and each cause of action therein, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on this Notice and the attached Memorandum of Points and Authorities, all pleadings, files and records in this action, and such oral and documentary evidence as is presented at the hearing. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 17, 2009. The parties discussed all issues raised in this motion and were not able to reach a resolution eliminating the need for a hearing.

Dated: December 24, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:  /S/ James M. Burgess
JAMES M. BURGESS
Attorneys for Defendants
SONY CORPORATION OF AMERICA, SONY
COMPUTER ENTERTAINMENT AMERICA, INC.,
and SONY ON-LINE ENTERTAINMENT LLC

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT .......................................................................1

II. FACTS AS ALLEGED BY PLAINTIFF ........................................................3

III. NEITHER THE ADA NOR THE UNRUH ACT APPLIES TO A MANUFACTURER OF A PRODUCT ...........................................................4

    A. The ADA Applies To The Owners And Operators Of "Places Of Public Accommodation," Not To Manufacturers. ...................................5

    B. The Unruh Act Also Does Not Apply To Manufacturers......................7

IV. THE ADA AND THE UNRUH ACT DO NOT REGULATE THE GOODS OR SERVICES OFFERED BY BUSINESSES..............................10

    A. The ADA Does Not Regulate Products Offered By A Business To The Public......................................................................................10

    B. The Unruh Act Also Does Not Regulate The Content Of Goods And Services. .......................................................................................16

    C. Stern's Complaint Is Not An "Access To Goods And Services" Case. ......................................................................................................19

    D. Extending The ADA And Unruh Act to Sony's Products Would Violate Sony's Rights To Free Expression. ..........................................20

V. STERN LACKS STANDING TO BRING THIS SUIT. ...............................21

VI. THIS COURT SHOULD GRANT SONY'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND. ................................................................22

VII. CONCLUSION .............................................................................................23

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

Access Now, Inc. v. Southwest Airlines Co.,
  227 F. Supp. 2d 1312 (S.D. Fla. 2002)...............................................19

Albrecht v. Lund,
  845 F.2d 193 (9th Cir. 1988)................................................................23

American Amusement Machine Ass'n v. Kendrick,
  244 F.3d 572 (7th Cir. 2001)...............................................................20

Arizona ex. rel. Goodard v. Harkins Amusement Ent.,
  548 F. Supp. 2d 723 (D. Ariz. 2008)...................................................12

Belton v. Comcast Cable,
  151 Cal. App. 4th 1224, 60 Cal. Rptr. 3d 631 (2007)........................17

Black v. Dep't of Mental Health,
  83 Cal. App. 4th 739, 100 Cal. Rptr. 2d 39 (2000)............................16

Butler v. Adoption Media, LLC,
  486 F. Supp. 2d 1022 (N.D. Cal. 2007)...............................................18

Californians for Disability Rights v. Mervyn's LLC,
  165 Cal. App. 4th 571, 81 Cal. Rptr. 3d 144 (2008)..........................17

Curran v. Mt. Diablo Counsel of the Boy Scouts,
  147 Cal. App. 3d 712, 195 Cal. Rptr. 325 (1983) ................................7

Doe v. Mutual of Omaha Ins. Co.,
  179 F.3d 557 (7th Cir. 1999).............................................11, 15, 24

Donald v. Sacramento Valley Bank,
  209 Cal. App. 3d 1183, 260 Cal. Rptr. 49 (1987)..............................17

Fleck & Assoc., Inc. v. Phoenix,
  471 F.3d 1100 (9th Cir. 2006)......................................................21, 22

Ford v. Schering-Plough Corp.,
  145 F.3d 601 (3d Cir. 1998).................................................................15

Hankins v. El Torito Restaurants, Inc.,
  63 Cal. App. 4th 510, 74 Cal. Rptr. 2d 684 (1998)............................17

Harper & Row Publishers, Inc. v. Nation Enterprises,
  471 U.S. 539, 559, 105 S. Ct. 2218 (1985) ........................................21

Interactive Digital Software Ass'n v. St. Louis,
  329 F.3d 954 (8th Cir. 2003)...............................................................20

W02-WEST:LJ5\402372054.2
DEFENDANTS' MOTION TO DISMISS UNDER F.R.Civ.P. RULE 12(b)(6)

Jones v. United States,
    529 U.S. 848, 120 S. Ct. 1904 (2000) ...........................................21

Koebe v. Bernardo Heights Country Club,
    36 Cal. 4th 824, 31 Cal. Rptr. 3d 565 (2005) ..........................17, 18

Lazar v. Hertz Corp.,
    69 Cal. App. 4th 1494, 82 Cal. Rptr. 2d 368 (1999) ................23, 24

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ...............22

Madden v. Del Taco, Inc.,
    150 Cal. App. 4th 294, 58 Cal. Rptr. 3d 313 (2007) ........................17

Marina Point Ltd. v. Wolfson,
    30 Cal. 3d 721, 180 Cal. Rptr. 496 (1982) .....................................8

McNeil v. Time Ins. Co.,
    205 F.3d 179 (5th Cir. 2000) ..............................................11-15, 23

Molski v. M.J. Cable, Inc.,
    481 F.3d 724 (9th Cir. 2007) .....................................................6

National Federation of Blind v. Target Corp.,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007).......................................19

Pallozzi v. Allstate Life Ins. Co.,
    198 F.3d 28 (2d Cir. 1999) .......................................................15

Parker v. Metropolitan Life Ins. Co.,
    121 F.3d 1006 (6th Cir. 1997) ...................................................15

Powell v. National Board of Medical Examiners,
    364 F.3d 79 (2d Cir. 2004) .........................................................6

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001) .....................................................16

Todd v. American Multi-Cinema, Inc., No. Civ. A. H-02-1944,
    2004 WL. 1764686 (S.D. Tex., Aug. 5, 2004).................................12

Torres v. AT&T Broadband, LLC,
    158 F. Supp. 2d 1035 (N.D. Cal. 2001)........................................6

Turner v. American Med. Colleges,
    167 Cal. App. 4th 1401, 85 Cal. Rptr. 3d 94 (2008)................8, 9, 17

Urhausen v. Long's Drugs Stores California, Inc.,
    155 Cal. App. 4th 254, 65 Cal. Rptr. 3d 838 (2007) ......................16

Video Software v. Schwarzenegger,
    556 F.3d 950 (9th Cir. 2009).....................................................20

Weyer v. Twentieth Century Fox Film Corp.,
    198 F.3d 1104 (9th Cir. 2000) ........................................................5, 11, 15, 20

Wolfe v. State Farm Fire & Casualty Ins. Co.,
    46 Cal. App. 554, 53 Cal. Rptr. 2d 868 (1996) ....................................24

Wooley v. Maynard,
    430 U.S. 705, 97 S. Ct. 1428 (1977) ...................................................21

Statutes and Regulations

U.S. Const. Amend. I..............................................................................20

Cal. Const., Art. I, § 2(a) ........................................................................20

42 U.S.C. § 12101, *et seq* .........................................................................1

42 U.S.C. 12102(1)(A) & (B).................................................................11

42 U.S.C. § 12182(a) ......................................................................5, 6, 11

42 U.S.C. § 12182(b)(2) ...................................................................11, 12

42 U.S.C. § 12186(b) ..............................................................................15

28 C.F.R. § 36.104 ....................................................................................2

28 C.F.R. § 36.307 .............................................................................15, 16

Cal. Civ. Code § 51.................................................................................1, 7

Cal. Civ. Code § 51(b)...............................................................................7

Cal. Civ. Code § 51(c).....................................................................9, 17, 19

Cal. Civ. Code § 51(f)................................................................................7

Cal. Civ. Code § 51.5.................................................................................7

Cal. Civ. Code § 51.5(a).............................................................................7

Cal. Civ. Code § 54.1(a)(1) .......................................................................9

Cal. Govt. Code § 12926 ...........................................................................2

Cal. Govt. Code § 12926.1 .........................................................................2

# I.

## PRELIMINARY STATEMENT

Plaintiff Alexander Stern ("Stern") is suing Defendants Sony Corporation of America ("SCA"), Sony Computer Entertainment America Inc. ("SCEA"), and Sony Online Entertainment LLC ("SOE") (collectively "Sony") under Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and the California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* ("Unruh Act").[1] Stern claims that Sony's computer game software products violate the ADA and the Unruh Act because they cannot be played (or at least used easily) by the visually disabled.

Stern is suing Sony in two capacities. First and foremost, Stern is suing Sony as a manufacturer of a product. This claim fails as a matter of law. Neither Title III of the ADA nor the Unruh Act regulates or governs manufacturers. Manufacturers are not required to design or alter their products to accommodate a consumer's disability, even if it is technologically feasible to do so. No law requires, for example, publishers to produce Braille, large print, or audio versions of every book, newspaper, or magazine they publish – which they would have to do if Stern's legal theory were correct.

Second, Stern is suing Sony as the alleged owner or operator of (1) multi-player gaming sites and (2) an auction site where products related to

---

[1] In his Complaint, Stern does not distinguish between SCA, SCEA and SOE. Stern treats these three separate companies as being the same entity. They are not. However, because these are facts beyond the scope of the pleadings, the three defendants will not address the differences between them in this motion. These factual and legal issues are reserved for another day, if necessary.

Sony's games can be bought and sold.  On the facts pled by Stern, this claim also fails as a matter of law.

Both the ADA and the Unruh Act prohibit owners and operators of "places of public accommodation" or "business establishments" from intentionally discriminating against the disabled, and require them to provide the disabled with equal access to their "places public accommodation" or "business establishments." Here, Stern's claim is that if those with visual disabilities were to use Sony's products or access Sony's sites, they would not be able to use Sony's products (the games or their underlying software) as well as an able-bodied gamer because of the way the products are designed or manufactured.

However, neither the ADA nor the Unruh Act regulate the content of the goods or services offered by businesses.  Neither statute (nor any accompanying regulation) purports to dictate to retailers what kinds of products they can or must offer to the public.  The law only requires equal access to those goods or services, in whatever form they are offered to the rest of the public.

This result makes common sense.  There are a myriad of recognized disabilities under federal and California law, both physical and mental.[2]  Under the law, no one disability is more important, or more deserving of protection, than any other disability.  Under the ADA and the Unruh Act, while Barnes & Noble must ensure that its stores are accessible, and it cannot discriminate against the disabled by refusing to do business with them, it is not required to stock a Braille or large print version or audio tape version of every book or magazine it sells.  Blockbuster

---

[2]  See the definitions of "disability" in 28 C.F.R. § 36.104 [especially section (1)(iii)] and California Government Code sections 12926 and 12926.1.

DEFENDANTS' MOTION TO DISMISS UNDER F.R.Civ.P. RULE 12(b)(6).

Video does not have to carry a closed caption version of each DVD in its stores. Theaters do not have to show captioned movies.

Yet that is exactly the dramatic expansion of the law that Stern seeks from this Court. This Court should decline Stern's invitation to be the first court in the country to hold that either the ADA or the Unruh Act applies to products.

## II.

### FACTS AS ALLEGED BY PLAINTIFF

Stern alleges that he has multiple learning, visual, and "visual processing" disabilities. (Complaint, ¶ ¶ 7, 23 and 25.) Stern claims that Sony is denying individuals with disabilities (including him) equal access to the products Sony sells; specifically, Sony's computer game software products and their upgrades. (Complaint, ¶ 3.) Stern alleges that Sony's refusal to remove disability-related access barriers to its products has denied Stern equal access to, or enjoyment of, Sony's products. (Complaint, ¶ ¶ 7 and 19.)

According to Stern, Sony denies persons with visual disabilities, including him, access to its products by preventing disabled individuals from navigating easily within the online games. (Complaint, ¶ 23.) Presumably to show that it is possible to do so, Stern claims that Sony's competitors make products that are accessible to individuals with disabilities. (Complaint, ¶ ¶ 26-27.) Stern alleges that by constructing its products in a way that is inaccessible to him, maintaining its products in an inaccessible form, and failing to redesign its products even after being notified of these issues, Sony has violated the Unruh Act (Complaint, ¶ 38) and the ADA (Complaint, ¶ 51).

Stern alleges that Sony's products are sold throughout California and the United States in both "brick-and-mortar" stores and on internet shopping sites. (Complaint, ¶ 15.)  However, Stern does not claim that Sony denied him access to any of these stores or web sites.

Finally, Stern asserts that Sony manages "events" throughout the United States based on some or all of its products.  (Complaint, ¶ 16.)  Stern also alleges that Sony offers an auction service where participants can buy and sell virtual items used in the gaming products.  (Complaint, ¶ 32.)  Stern is apparently referring to SOE's annual fan gatherings and online virtual goods auction site. Significantly, Stern has not alleged, and cannot truthfully allege, that he cannot access any fan convention or use the online auction site, or that Sony has excluded him from either.  Instead, Stern's claim appears to be that Sony's failure to redesign its games is somehow linked to his alleged inability to participate on an equal basis in fan gatherings; and separately, that if Sony redesigned its games to accommodate Stern's particular disability, then Stern would be better able to acquire "virtual items" within the games and later sell those items to other players on an online auction site.

III.

NEITHER THE ADA NOR THE UNRUH ACT APPLIES TO A MANUFACTURER OF A PRODUCT

The heart of Stern's Complaint is that Sony manufactures its products in such a way that the products are either impossible or difficult for those with visual disabilities to use because of their disabilities.  The threshold question is whether either Title III of the ADA or the Unruh Act applies to a product manufacturer.

A. The ADA Applies To The Owners And Operators Of "Places Of Public Accommodation," Not To Manufacturers.

Title III of the ADA prohibits those who own, lease, or operate a "place of public accommodation" from discriminating on the basis of disability in the full and equal enjoyment of the goods offered at any place of public accommodation. 42 U.S.C. § 12182(a). Specifically, the ADA provides in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a) (emphasis added).

Title III provides an extensive list of "public accommodations" in section 12181(7), including such a wide variety of places such as an inn, a restaurant, a theater, an auditorium, a bakery, a laundry mat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium. As the Ninth Circuit explained in Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104 (9th Cir. 2000), all the places on the list have something in common. "They are actual, physical places where goods or services are open to the public, and places were the public gets those goods or services. . . . [T]he term, 'place of public accommodation,' [must] be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical place is required." Id. at 1114.

To state a claim under Title III, Stern must allege (1) that he is disabled within the meaning of the ADA; (2) that Sony owns, leases, or operates a place of public accommodation; and (3) that Sony discriminated against him by denying him a full and equal opportunity to enjoy the services Sony provides. See 42 U.S.C. § 12182(a); Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (stating the elements of a Title III ADA claim); Powell v. National Board of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004) (same).

Stern has no legally viable claim against Sony in its capacity of a manufacturer of a product. In its role as a manufacturer, Sony is not the owner, operator, or lessee of "a place of public accommodation" so as to trigger any potential ADA liability. The text of the statute simply does not apply to manufacturers.[3] To Sony's knowledge, no court or regulation has applied Title III of the ADA to a manufacturer.

Sony cannot possibly design its computer games, which are by definition intended for a visual medium, so that every gamer could use the products equally – regardless of what mental or physical disability (or combination of disabilities) the gamer might have. Under Stern's theory of the law, that is exactly what Sony would have to do to avoid liability. While Stern may only be focusing

---

[3] An example of a case in which the court found that the defendant was not covered by the ADA because it was not the owner or operator of a public accommodation is Torres v. AT&T Broadband, LLC, 158 F. Supp. 2d 1035 (N.D. Cal. 2001). In Torres, a blind plaintiff contended that the on-screen channel menu provided by a digital cable service was inaccessible to blind people. The court held that "[t]he ADA includes an exhaustive list of private entities that constitute a public accommodation, and a digital cable system is not one of them." Id. at 1037. The Torres court also rejected the plaintiff's argument that "when he uses the defendants' digital cable menu, his television set becomes a place of exhibition or entertainment… [T]he plaintiff's home cannot reasonably be classified as a place of public exhibition or entertainment. Thus, neither the digital cable system nor its on-screen channel menu can be considered a place of public accommodation within the meaning of the ADA." Id. at 1037-1038.

on those with sight impairments, were Stern's legal theory to be accepted, Sony would have to alter its computer games to accommodate <u>all</u> disabilities.

### B.    <u>The Unruh Act Also Does Not Apply To Manufacturers.</u>

The result is the same under the Unruh Act. There is nothing in the texts of this statute that applies to manufacturers or their products. No court has held that the Unruh Act applies to products or their manufacturers.

While it has been amended several times since 1959, California Civil Code section 51 has always provided that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their [specified personal characteristics] . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Section 51.5 provides, in part, that "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51. . . ." Cal. Civ. Code § 51.5(a).[4]

The primary purpose of the Unruh Act "is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the Act." <u>Curran v. Mt. Diablo Counsel of the Boy Scouts</u>, 147 Cal. App. 3d 712, 733, 195 Cal. Rptr. 325, 336 (1983). "Emanating from and modeled upon traditional 'public accommodations' legislation, the Unruh Act expanded the reach of such statutes from common carriers and places

---

[4]   In 1992, the California Legislature amended the Unruh Act to state that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

of public accommodation and recreation, e.g., railroads, hotels, restaurants, theaters, and alike, to include 'all business establishments of every kind whatsoever.'" Marina Point Ltd. v. Wolfson, 30 Cal. 3d 721, 731, 180 Cal. Rptr. 496, 502 (1982).

Turner v. American Med. Colleges, 167 Cal. App. 4th 1401, 85 Cal. Rptr. 3d 94 (2008) is instructive regarding what is and what is not required by the Unruh Act.  Among other things, defendant Association of American Medical Colleges ("AAMC") develops and administers the Medical College Admission Test ("MCAT"), a nation-wide standardized test for medical school applicants.  Id. at 1404.  The plaintiffs were California residents with reading-related learning disabilities and/or ADHD who applied to take the MCAT in California.  The AAMC denied plaintiffs' request for more time and/or a private room in which to take the test.  Therefore, plaintiffs filed this class action lawsuit alleging state law violations of the Unruh Act and the California Disabled Persons Act, California Civil Code sections 51 and 54-55.  Id. at 1405.

The AAMC had established certain standards for the administration of the MCAT, including a time limit for each section of the test.  These standards are neutral and extend to all applicants regardless of their membership in a particular group.  Plaintiffs' claim under the Unruh Act was effectively an argument that these general policies are discriminatory because they have a disparate impact on those with learning and reading-related disabilities, who have a more difficult time taking tests under standard conditions.  Id. at 1409.  Plaintiffs were basically asking the court to require the AAMC to change its product (the standardized exam) to accommodate plaintiffs' disabilities.

The Turner court held that the Unruh Act does not require the alteration of standardized testing conditions to accommodate applicants with learning and

reading-related disabilities. The court explained that despite its broad application, the Unruh Act does not extend to practices and policies that apply equally to all persons. The court cited California Civil Code section 51(c) which provides: "This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation." A policy that is neutral on its face is not actionable under the Unruh Act, even if it has a disproportionate impact on a protected class. Id. at 1408.

For its part, California Civil Code section 54.1(a)(1) qualifies the requirement of "full and equal access" by describing it as that available to "other members of the general public." It does not entitle a disabled individual to greater access than the public at large. The Turner court concluded that other members of the general public are not entitled to the performance-related accommodations sought by plaintiffs, and there is nothing in California law requiring a testing entity to alter the conditions of a standardized test. Id. at 1412-1413.

The same legal principles apply to Sony's products. As long as Sony does not discriminate against the disabled by refusing to do business with them, or refusing to sell them products on the same terms and conditions as offered to other members of the general public, Sony has not violated California law.

Like the ADA, the Unruh Act does not set such an unattainable standard as requiring manufacturers to ensure that their products accommodate all disabilities. It is no answer for Stern to argue that Sony only needs to address his particular disabilities, or that Sony only needs to address all disabilities it is technologically feasible to accommodate. Had Congress or the California

DEFENDANTS' MOTION TO DISMISS UNDER F.R.Civ.P. RULE 12(b)(6).

Legislature intended to impose such an onerous and expensive demand on manufacturers, they would have done so in the text of the statutes. They did not. Accordingly, this Court should dismiss Stern's claims against Sony as a manufacturer.

IV.

THE ADA AND THE UNRUH ACT DO NOT REGULATE THE GOODS OR SERVICES OFFERED BY BUSINESSES

Stern's next theory is that Sony's online sites (its gaming sites and its auction sites) qualify as "places of public accommodation" under the ADA and/or as "business establishments" under the Unruh Act. Stern's premise is that the owners or operators of "public accommodations" or "business establishments" are required by the ADA and the Unruh Act to ensure that the products they offer to the public accommodate his disabilities. Stern is legally wrong. Neither the ADA nor the Unruh Act regulates the content of the goods or services offered by businesses.

A. The ADA Does Not Regulate Products Offered By A Business To The Public.

Discrimination under Title III of the ADA includes:

> A failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aides and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the

- 10 -

good, service, facility, privilege, advantage, or

accommodation being offered or would result in an undue

burden . . .

42 U.S.C. § 12182(b)(2)(A)(iii). The ADA defines "auxiliary aides and services" to

include "effective methods of making aurally delivered materials available to

individuals with hearing impairments" and "effective methods of making visually

delivered materials available to individuals with visual impairments." Id.

§ 12102(1)(A) & (B).

All courts interpreting this language have concluded that "[t]he

common sense of the statute is that the content of the goods or services offered by a

place of public accommodation is not regulated." See Doe v. Mutual of Omaha Ins.

Co., 179 F.3d 557, 560 (7th Cir. 1999), *cert. denied* 120 S.Ct. 825 (2000) (holding

that the AIDS caps in the defendant's health insurance policies did not violate the

public accommodations provisions of the ADA). The ADA does not require a seller

to alter its product to make it equally valuable to the disabled and to the non-

disabled. Id. at 563.

The Ninth Circuit agrees that the ADA's prohibition against

discrimination under Section 12182(a) is limited to the goods and services offered

by an entity. Weyer, 198 F.3d at 1115 ("The ordinary meaning of [§ 12182(a)] is

that whatever goods or services the place provides, it cannot discriminate on the

basis of disability in providing enjoyment of those goods and services"). In other

words, the ADA "does not require provision of different goods or services, just

nondiscriminatory enjoyment of those that are provided." Id.; see also McNeil v.

Time Ins. Co., 205 F.3d 179, 186 (5th Cir. 2000) ("[A] business is not required to

alter or modify the goods or services it offers…").

The McNeil Court explained:

> The provisions in § 12182(b)(1)(A)(i)-(iii) concerning the
> opportunity to benefit from or to participate in a good or
> service do not imply that the goods or services must be
> modified to ensure that opportunity or benefit. <u>Rather, this
> section only refers to impediments that stand in the way of
> a person's ability to enjoy that good or service in the form
> that the establishment normally provides it</u>.

<u>Id</u>. at 186, fn. 9 (emphasis added). Moreover, the ordinary meaning of the words
"excluded," "denied," "segregated," and "treated differently" in section
12182(b)(2)(A)(iii) "supports an interpretation which requires public
accommodations to ensure persons with disabilities have access to the same services
that are offered, but does not require public accommodations to offer different
services." <u>Arizona ex. rel. Goodard v. Harkins Amusement Ent</u>. 548 F. Supp. 2d
723, 725 (D. Ariz. 2008) (holding that the ADA does not require movie theaters to
provide captioned movies for the hearing impaired or to provide descriptions for the
seeing impaired). Public accommodations must ensure that persons with disabilities
have access to the services they provide (utilizing auxiliary aides and services if
necessary), but are not required to alter or modify the content of those services. <u>Id</u>.
at 729-730.

Under the law, "[e]qual access does not mean equal enjoyment." <u>Todd
v. American Multi-Cinema, Inc.</u>, No. Civ. A. H-02-1944, 2004 W.L. 1764686, at *4
(S.D. Tex., Aug. 5, 2004) (finding that a movie theater was not required to provide
open or closed captioning for the hearing impaired). In <u>McNeil</u>, <u>supra</u>., 205 F.3d

179, the court had to decide whether the ADA's anti-discrimination provisions regulate the terms and content of an insurance policy (in other words, the defendant's product or service). The court's analysis and holding apply directly to Sony's products as much as they did to Time's insurance policy. "Practically speaking, how can an owner, etc., deny the full and equal enjoyment of the goods or services that he offers? By denying access to, or otherwise interfering with, the use of the goods or services that the business offers. The goods and services that the business offers exist a priori and independently from any discrimination. Stated differently, the goods and services referred to in the statute are simply those that the business normally offers." <u>Id.</u> at 186-187.

> We acknowledge that it is literally possible, though
> strained, to construe "full and equal enjoyment" to suggest
> that the disabled must be able to enjoy every good and
> service offered to the same and identical extent as those
> who are not disabled. Construed in this manner, the
> statute would regulate the content and type of goods and
> services. That would be necessary to ensure that the
> disabled's enjoyment of goods and services offered by the
> place of public accommodation would be no less than, or
> different from, that of the non-disabled. But such a
> reading is plainly unrealistic, and surely unintended,
> because it makes an unattainable demand.

<u>McNeil</u>, 205 F.3d at 187.

> Furthermore, were we to try to construe the statute in this
> manner, its application would force impractical results. If

the blind must be able to enjoy all goods and services to the same extent as the sighted, bookstores would be forced to limit the selection of books they carried because they would need to stock braille versions of every book. Shoe stores would reduce the styles available to the general customers, because they would need to offer special shoes for people with disabling foot deformities in every style sold to the non-disabled. Sporting good stores might have to close altogether. Restaurants would have to limit their menus to avoid discriminating against diabetics. After all, to offer food to the public that a diabetic could not eat would, in the literal words of the statute, deny the diabetic the full and equal enjoyment of the goods of the restaurant compared with those with no limitation on their diets.

By citing such examples, we do not mean to make the statute sound ridiculous. We do this to illustrate that the language of the statute can only reasonably be interpreted to have some practical, common sense boundaries. And if we construe Title III to regulate the content of goods and services, there seem to be no statutory boundaries. Based on the language of the statute, we simply see no non-arbitrary way to distinguish regulating the content of some goods from regulating the content of all goods.

In sum, we read Title III to prohibit an owner, etc., of a place of public accommodation from denying the disabled access to the good or service and from interfering with the

1    disableds' full and equal enjoyment of the goods and

2    services offered.  <u>But the owner, etc., need not modify or</u>

3    <u>alter the goods and services that it offers in order to avoid</u>

4    <u>violating Title III</u>.  [¶ ]  . . .  <u>Our opinion merely declines</u>

5    <u>to dictate to every business in the country what types of</u>

6    <u>goods and services must be offered</u>.

7

8    <u>McNeil</u>, 205 F.3d at 187-188 (emphasis added).

9

10    Other Circuits addressing the content of insurance policies have

11   likewise concluded that Title III does not regulate the content of goods and services.

12   <u>Weyer</u>, <u>supra</u> (an employee and its insurance administrator can offer a group

13   disability insurance policy as a fringe benefit that gives more benefits for physical

14   disabilities than for mental disabilities, without violating the ADA); <u>Ford v.</u>

15   <u>Schering-Plough Corp.</u>, 145 F.3d 601, 613 (3d Cir. 1998) (insurance policy limiting

16   coverage for mental disabilities did not violate Title III); <u>Parker v. Metropolitan Life</u>

17   <u>Ins. Co.</u>, 121 F.3d 1006, 1012 (6th Cir. 1997); <u>Doe</u>, <u>supra</u>, 179 F.3d at 559-563

18   (insurance policy with cap on AIDS coverage did not violate Title III); <u>cf.</u> <u>Pallozzi</u>

19   <u>v. Allstate Life Ins. Co.</u>, 198 F.3d 28, 31-32 (2d Cir. 1999) (refusal to sell life

20   insurance to one with a mental disorder violated Title III).

21

22    The federal regulations interpreting the ADA reach the same

23   conclusion.[5]  28 C.F.R. § 36.307 provides:

24

25

26

27   _____
     [5] The Attorney General is authorized to issue regulations concerning Title III of the
28     ADA.  42 U.S.C. § 12186(b).

1        (a)  This part does not require a public accommodation to

2        alter its inventory to include accessible or special goods

3        that are designed for, or facilitate use by, individuals with

4        disabilities.

5

6        (b)  A public accommodation shall order accessible or

7        special goods at the request of an individual with

8        disabilities if, in the normal course of its operation, it

9        makes special orders on request for unstocked goods, and

10        if the accessible or special goods can be obtained from a

11        supplier with whom the public accommodation

12        customarily does business.

13

14  28 C.F.R. § 36.307 (2008).  No federal regulation under the ADA requires a

15  business to ensure that its inventory can be used by all individuals, regardless of

16  their own unique disability or disabilities.

17

18      B.  <u>The Unruh Act Also Does Not Regulate The Content Of Goods And</u>

19        <u>Services.</u>

20

21        The Unruh Act secures equal access to public accommodations and

22  prohibits discrimination by business establishments.  <u>Sprewell v. Golden State</u>

23  <u>Warriors</u>, 266 F.3d 979, 989 (9th Cir. 2001); <u>Black v. Dep't of Mental Health</u>, 83

24  Cal. App. 4th 739, 100 Cal. Rptr. 2d 39 (2000).  California law is "intended to

25  secure to disabled persons the 'same rights as the general public to the full and free

26  use' of facilities opened to the public.  <u>Urhausen v. Long's Drugs Stores California,</u>

27  <u>Inc.</u>, 155 Cal. App. 4th 254, 261, 65 Cal. Rptr. 3d 838, 842 (2007).  The statute

28  focuses upon physical access to public places.

The published cases have primarily involved challenges of physically disabled individuals denied access to some public site or service due to their disability.  See, e.g., Californians for Disability Rights v. Mervyn's LLC, 165 Cal. App. 4th 571, 580-581, 81 Cal. Rptr. 3d 144, 150-151 (2008) (claim that store did not provide adequate pathways, making merchandise inaccessible to persons using wheelchairs or other mobility devices); Madden v. Del Taco, Inc., 150 Cal. App. 4th 294, 296, 58 Cal. Rptr. 3d 313 (2007) (concrete trash container that blocked restaurant entrance and caused wheelchair-bound plaintiff to fall); Hankins v. El Torito Restaurants, Inc., 63 Cal. App. 4th 510, 515, 74 Cal. Rptr. 2d 684, 687 (1998) (patron on crutches denied permission to use the only bathroom on first floor, which was reserved for employees); and Donald v. Sacramento Valley Bank, 209 Cal. App. 3d 1183, 1186-1187, 260 Cal. Rptr. 49, 50 (1987) (quadriplegic could not access bank's automatic teller machine due to the steps in front of it).

The relevant point here is that the Unruh Act does not extend to practices and policies that apply equally to all persons.  Turner v. American Med. Colleges, supra., 167 Cal. App. 4th 1401, 1408 (2008); see Cal. Civ. Code § 51(c). For example, in Belton v. Comcast Cable, 151 Cal. App. 4th 1224, 60 Cal. Rptr. 3d 631 (2007), the blind plaintiff complained that a cable company's policy of packaging its music services with television programming was discriminatory because sighted persons could fully use the television while blind persons could not. Belton, 151 Cal. App. 4th at 1237-1238.  The Court concluded that the challenged policy (or service) did not violate the Unruh Act because it applied equally to all customers and did not target those with visual disabilities, even if it had a disparate effect on the latter group.  Id. at 1237-1238.[6]

---

[6]  To the same effect is Koebe v. Bernardo Heights Country Club, 36 Cal.4th 824, 31 Cal. Rptr. 3d 565 (2005).  In that case, the lesbian partner of a woman who

For an example of the proper application of the Unruh Act in an internet context, the Court can look to <u>Butler v. Adoption Media, LLC</u>, 486 F. Supp. 2d 1022 (N.D. Cal. 2007). In that case, defendants ran businesses that operated adoption-related websites. Plaintiffs were registered domestic partners in California who were seeking to adopt a child. They were certified and approved to adopt in California, and applied to have their profile posted on the defendants' ParentProfiles.com website. Their application was rejected on the grounds that the defendants had a policy of allowing only individuals in an opposite-sex marriage to post profiles on the website. Plaintiffs alleged that defendants' refusal to offer same-sex domestic partners the adoption-related services on ParentProfiles.com, on the same terms and conditions offered married couples, constituted unlawful discrimination on the basis of sexual orientation. At the pleading stage, plaintiffs were allowed to pursue their Unruh Act claim. The defendants were selling adoption related services. It was a commercial enterprise, consisting of a website where prospective parents could post profiles for a fee. Defendants were allegedly refusing to do business with the plaintiffs because plaintiffs were homosexuals. The defendants were accused of intentionally discriminating against the plaintiffs based on their sexual orientation.

Stern's case is quite different. According to Stern's own Complaint, the products that Stern could buy were the same products that Sony produced for all consumers. Stern was given equal access to Sony's sites, even if Stern was not able to use the products as easily as others due to his multiple disabilities. Stern was not

_____

belonged to a private country club was denied club privileges available to members' spouses. <u>Id.</u> at 831. She filed a lawsuit claiming that this policy amounted to discrimination based on sexual orientation because same-sex couples could not legally marry at that time. <u>Id.</u> at 854. The Supreme Court reaffirmed that an Unruh Act violation requires more than a disparate impact on a particular group and concluded that the plaintiff could not state a claim under this theory when the policy extended to all unmarried couples, regardless of their sexual orientation.

discriminated against in the sense of being treated differently than any other person. See Cal. Civ. Code § 51(c).  To Sony's knowledge, no court or regulation has interpreted the Unruh Act to regulate the content or design of any product offered by any business to the public.  This Court should not be the first to do so.

C.    Stern's Complaint Is Not An "Access To Goods And Services" Case.

Stern cannot rely on National Federation of Blind v. Target Corp., 582 F. Supp. 2d 1185 (N. D. Cal. 2007).  In that case, the plaintiff contended that "[s]ince the blind cannot use Target.com, they are denied full and equal access to Target stores." Id. at 1189.  The district court found that Target.com, an internet shopping site, was the online equivalent of a physical store in that customers could purchase many of the same items that were available in Target stores and perform functions related to Target stores.  Id. at 1188.  The district court held that plaintiffs could proceed on their claim that Target.com was inaccessible to the legally blind. Id. at 1209.[7]

Stern's claim is significantly different. Stern never claims that Sony's websites were inaccessible, or that Sony has refused him access to Sony's websites, or that he is unable to access the auction or gaming sites.  Stern never claims that Sony has refused to do business with him, or that Sony has erected any barriers to his buying Sony's products on the same terms and in the same format as the products are offered to the general public.  Rather, Stern is attempting to regulate and change the content of Sony's products to make it easier for him to play Sony's video games.

---

[7] But see, Access Now, Inc. v. Southwest Airlines Co., 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002) (holding that because the website was not a physical location, plaintiff failed to state a claim under the ADA that Southwest.com – Southwest's virtual ticket counter – was inaccessible).

<u>Target</u> is not applicable to the facts alleged and Stern's claims do not come within the scope of the ADA or the Unruh Act.  <u>See</u> <u>Weyer</u>, <u>supra</u>, 198 F.3d at 1115.

       D.      <u>Extending The ADA And Unruh Act to Sony's Products Would Violate Sony's Rights To Free Expression.</u>

In the alternative, yet another reason this Court should dismiss Stern's Complaint is that extending the ADA and/or the Unruh Act to Sony's products would violate Sony's free expression rights guaranteed by both the federal and California Constitutions.  U.S. CONST. Amend. I; CAL. CONST., Art. I, § 2(a).

In his Complaint, Stern himself acknowledges that Sony's video games are a form of entertainment.  Stern alleges that the "virtual and interactive environments of the Products constitute a substantial segment of the growing recreational, therapeutic, entertainment, financial, social and informational software industry."  (Complaint, ¶ 3.)  "The Products provide the public with recreational, therapeutic, entertainment, financial, social and informational opportunities."  (Complaint, ¶ 11.)

Courts have held that video games qualify for First Amendment protection.  <u>See</u>, <u>e.g.</u>, <u>Video Software v. Schwarzenegger</u>, 556 F. 3d 950 (9th Cir. 2009) (invalidating California statutes which imposed restrictions and a labeling requirement on the sale or rental of "violent video games" to minors); <u>Interactive Digital Software Ass'n v. St. Louis</u>, 329 F. 3d 954, 956-958 (8th Cir. 2003) (holding that "violent" video games are a form of expression protected by the First Amendment); and <u>American Amusement Machine Ass'n v. Kendrick</u>, 244 F.3d 572 (7th Cir. 2001) (granting preliminary injunction to the manufacturers of video games which were seeking to enjoin, as a violation of freedom of expression, the

enforcement of an Indianapolis ordinance that sought to limit the access of minors to video games that depict violence).

Here, it would violate Sony's free expression rights for the Government to require that all speech must be able to be seen, heard, or understood by all, regardless of disability.  See Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 559, 105 S. Ct. 2218 (1985) ("freedom of thought and expression 'includes both the right to speak freely and the right to refrain from speaking at all.'" (quoting Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428 (1977)).  Stern's legal argument, if adopted, would mean that the Government could pass a law prohibiting a speaker from stepping to the podium in a public theater unless the speaker or theater provided someone to sign the speech for anyone in the audience who might be deaf.

Courts recognize that statutes should not be interpreted in such a way as to render them unconstitutional.  See Jones v. United States, 529 U.S. 848, 857, 120 S. Ct. 1904, 1911 (2000) ("where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter").  Reading the ADA and the Unruh Act as Stern proposes would do exactly that.  This is another reason this Court should reject Stern's interpretation of the law.

V.

STERN LACKS STANDING TO BRING THIS SUIT.

Another reason to dismiss Stern's claims is that, based on his Complaint, Stern has no standing to bring this lawsuit.  To establish standing to sue, a plaintiff must demonstrate "a sufficient personal stake in the outcome."  Fleck &

1  Assoc., Inc. v. Phoenix, 471 F.3d 1100, 1103 (9th Cir. 2006).  The plaintiff must
2  allege "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized
3  and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly
4  traceable to the challenged action of the defendant; and (3) it is likely, as opposed to
5  merely speculative, that the injury will be redressed by a favorable decision."  Lujan
6  v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d
7  351, 364 (1992).  The first element, "injury in fact," requires a showing of an
8  "invasion of a legally protected interest" that "affect[s] the plaintiff in a personal and
9  individual way."  Fleck, supra, at 1104 (internal citation omitted).  A plaintiff
10  seeking to invoke federal court jurisdiction must plead that he has suffered some
11  cognizable injury to make the threshold showing of a case or controversy.

12

13  Here, at least based on Stern's Complaint, he cannot establish an injury
14  in fact.  Stern has not alleged that he actually bought any of Sony's products.
15  Plaintiff never alleges that he has actually tried to use any of Sony's products.  Stern
16  does not claim that he has ever tried to play Sony's games on any of its online
17  gaming sites.  He does not claim that he ever tried to use Sony's auction site.  Stern
18  implies these things, but he has not alleged any actual facts to show that he has
19  suffered any injury in fact so as to have standing.

20

21  VI.

22  THIS COURT SHOULD GRANT SONY'S MOTION TO DISMISS
23  WITHOUT LEAVE TO AMEND.

24

25  Stern cannot possibly cure the fundamental defects with his Complaint
26  given the facts he has alleged.  While Sony recognizes that leave to amend is
27  routinely granted, when, as here, the dispositive facts are not in dispute and the sole
28  issue is whether there is liability as a matter of substantive law, leave to amend may

be denied.  See Albrecht v. Lund, 845 F.2d 193, 195-196 (9th Cir. 1988) (amendment to fraud complaint properly denied where alleged misstatements "could not be misrepresentations" as a matter of law).

Similarly, California courts have held that Unruh Act issues can be decided on demurrer when the issue is a purely legal question.  See Lazar v. Hertz Corp., 69 Cal. App. 4th 1494, 1509, 82 Cal. Rptr. 2d 368, 378 (1999) (sustaining demurrer to Unruh Act Complaint that alleged that the defendant rental car companies violated the Unruh Act by refusing to rent cars to individuals under age 25 or unreasonably restricted such rentals).

Stern cannot change the fact that he is suing the manufacturer of a product, claiming that the product must be altered to take into account his disabilities.  As a matter of law, that claim fails.  No purpose would be served by granting leave to amend on these facts.

VII.

## CONCLUSION

As many courts have recognized, the reality is that, in many, if not most cases, the disabled may not have the capacity or ability to enjoy the goods and services of an establishment "fully and equally" compared to the able-bodied. While that is unfortunate, there would seem to be no statutory boundary if the ADA regulated the content of either goods or services.  McNeil, supra, 205 F.3d at 187 (providing examples of impracticable results from a contrary construction).

| | |
|---|---|
| 1 | Had Congress purposed to impose so enormous a burden |
| 2 | on the retail sector of the economy and so vast a |
| 3 | supervisory responsibility on the federal courts, we think it |
| 4 | would have made its intention clearer and would at least |
| 5 | have imposed some standards.  It is hardly a feasible |
| 6 | judicial function to decide whether shoe stores should sell |
| 7 | single shoes to one-legged persons and if so at what price, |
| 8 | or how many Braille books the Borders or Barnes & Noble |
| 9 | bookstore chains should stock in each of their stores. |
| 10 | There are defenses to a prima facie case of public- |
| 11 | accommodation discrimination, but they would do little to |
| 12 | alleviate the judicial burden of making standardless |
| 13 | decisions about the composition of retail inventories. |

Doe, supra, 179 F.3d at 560.

California courts have likewise recognized that the Unruh Act does not permit courts to engage in complex economic regulation under the guise of judicial decision making.  Lazar, supra 69 Cal. App. 4th at 1502.  "The [a]ppellate courts have neither the power nor the duty to determine the wisdom of any economic policy; that function rests solely with the Legislature.  Judicial intervention in complex areas of economic policy is inappropriate."  Wolfe v. State Farm Fire & Casualty Ins. Co., 46 Cal. App. 554, 562, 53 Cal. Rptr. 2d 868, 883 (1996) (court declined to involve itself in Unruh Act claim alleging economic issues).

Stern's complaints about Sony's products are beyond the scope of what either the ADA or the Unruh Act were ever designed to address.  Sony's computer games are by definition intended as a visual medium.  While Sony's products may or

may not be more difficult for the visually impaired to play, Sony is not required by law to change the nature of its games to accommodate Stern or any other plaintiff. Stern is not entitled to use the courts to try to force Sony to have audible cues for blind gamers, to offer alternate color palates for color blind gamers, to light up enemies hiding in the grass in the games to make them more visible to those with partial sight, to adapt its games for those who suffer from mental or learning disabilities, or to come up with ways for those who are paralyzed to play these games. Sony and all other video game manufacturers would be in an impossible position if this were legally required. Any change Sony might make to accommodate one person's disability might not be effective for those with the same disability – or the change could adversely affect those with different disabilities.

Because the facts alleged in Stern's Complaint fail to state a legally viable claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court should grant Sony's Motion to Dismiss without leave to amend.

Dated: December 24, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /S/ James M. Burgess
JAMES M. BURGESS

Attorneys for Defendants
SONY CORPORATION OF AMERICA, SONY COMPUTER ENTERTAINMENT AMERICA INC., and SONY ONLINE ENTERTAINMENT LLC